**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stef Boris Dawood, | No. CV- 18-00924-PHX-DJH (JZB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE DIANE J. HUMETEWA, UNITED STATES DISTRICT JUDGE:

Petitioner Stef Boris Dawood has filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)

**I.    Summary of Conclusion.**

Petitioner raises four grounds for relief in his timely Petition. All of Petitioner's claims are unexhausted and procedurally defaulted because he did not raise them in the state courts. Petitioner fails to demonstrate cause and prejudice to excuse the default. Petitioner alleges ineffective assistance of counsel to excuse the default, but Petitioner fails to raise a substantial claim regarding ineffective assistance of counsel. Petitioner's Fourth Amendment claims are not cognizable. Therefore, the Court will recommend that the Petition be denied and dismissed with prejudice.

//

## II.  Background.

### A.  Factual and Procedural Background.

The Arizona Court of Appeals found:

> D.B. worked the night shift at a convenience store in Mesa, along with her daughter, S.H. Around 7:30 p.m., a man entered the store wearing a white "hoodie" with the hood pulled over his head, blue jeans, and a green bandana covering most of his face. D.B. heard a "clicking sound" and looked up to see the man pointing a gun at her. The man demanded the money in the register. D.B. put the money on the counter. The man grabbed $160 in bills and stuck them in the hoodie's front pocket. He then turned to S.H., pointed the gun at her, and told her to open her register. S.H. responded that the register was broken and that she did not have a key to open it.

> The man turned the gun back to D.B. and demanded "Newport cigarettes." D.B. set four packs on the counter. The man put the cigarettes in the hoodie pocket and left the store. Outside, he turned right toward newspaper stands in front of the store.

> D.B. called 9-1-1 and described the man as Hispanic, with dark hair, in his 20s, approximately 5'9" to 5'10" tall, and weighing approximately 150 pounds. Officers responded to the scene. En route, Officer Kirkpatrick saw two men fitting the description near the store; one wore a white hoodie. The officer stopped the men, but determined they were likely not involved in the robbery and continued to the convenience store.

> At the store, D.B. and S.H. described the suspect as a Hispanic male in his 20s who was approximately 5'8" tall, weighing about 150 pounds, with brown eyes and short black hair. D.B. described the gun as a silver semi-automatic .32 or .38 with a black grip. Officers found an unopened box of Newport cigarettes a few yards from the front entrance of the store and a newspaper stand that was knocked over "as though somebody had ran by it and knocked it over in the process." A crime scene specialist collected two fingerprints from the cigarette box, one of which was matched to Dawood.

> Dawood was indicted on two counts of armed robbery, both class 2 dangerous felonies. A jury trial ensued. At the conclusion of the State's case-in-chief, Dawood moved for a judgment of acquittal pursuant to Rule 20, Arizona Rules of Criminal Procedure ("Rule"). The motion was denied.

> Dawood testified he did not remember anything that happened in November 2011 because it was "too long" ago, but he denied committing the robbery. He testified that he smoked Newport cigarettes, but preferred "Newport 100[s]" over the Newport brand sold at the convenience store. He further testified that his fingerprint could have ended up on the cigarette box because the store gave him the wrong type of Newport cigarettes and he gave them back.

> The jury found Dawood guilty of both counts. It found two aggravators for sentencing purposes: that the offense was committed for pecuniary gain and that it caused physical, emotional, or financial harm to the victims. Dawood was sentenced to a presumptive, concurrent term of

10.5 years on each count, with 263 days' pre-sentence incarceration credit.

*State v. Dawood,* 2013 WL 4611240, at \*2 (Ariz. Ct. App. 2013).

### B.    Direct Appeal.

On May 21, 2013, Petitioner's counsel filed an *Anders*' brief stating there was "no arguable question of law that is not frivolous." (Doc. 13-4, Ex. S, at 54.) On July 1, 2013, Petitioner filed a pro se appellate brief (1) arguing that the latent print examiners were not qualified as experts and (2) attacking the sufficiency of the evidence. (Doc. 13-4, Ex. T, at 62.)

On August 29, 2013, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (Doc. 13-4, Ex. U, at 75; *Dawood*, 2013 WL 4611240, at \*3.) On October 22, 2013, the mandate issued. (Doc. 13-4, Ex. V, at 85.)

### C.    Petitioner's Post-Conviction Relief Proceeding.

On September 4, 2013, Petitioner filed a notice of post-conviction relief. (Doc. 13-4, Ex. X, at 99.) On December 20, 2013, Petitioner's counsel filed a notice of completion stating "undersigned counsel does not believe that a sufficient factual or legal basis exists upon which to ground a good faith Rule 32 claim in light of the requirements of that rule." (Doc. 13-4, Ex. Y, at 104.) On February 14, 2014, Petitioner filed a pro se petition arguing counsel provided ineffective assistance by failing to (1) challenge whether the jury verdicts were coerced, (2) challenge a prior felony conviction, (3) file a motion for new trial based on jury questions, (4) object to answers to jury questions, (5) to call a police officer as a trial witness regarding photographic line ups, and (6) act professionally during trial. (Doc. 13-5, Ex. AA, at 2-17.) On May 5, 2014, Petitioner mailed an amended petition, which was filed on July 1, 2014. (Doc. 13-5, Ex. BB, at 41.) In the amended petition, Petitioner advanced the same arguments presented in the petition, and also argued counsel failed to (1) challenge the photograph line-ups, (2) obtain an expert to challenge the state's expert, (3) object to witness descriptions, (4) object to an officer's failure to appear, (5) introduce DNA results, and (6) object to limitations on line-up identifications. (*Id.* at 60.)

1  On November 25, 2014, the court denied the petition on the merits. (Doc. 13-5, Ex. HH,

2  at 132.)

3      On November 4, 2015, Petitioner filed a Petition for Review in the Arizona Court

4  of Appeals. (Doc. 13-6, Ex. NN, at 9.) On April 17, 2017, the Arizona Court of Appeals

5  granted review but denied relief. (Doc. 13-6, Ex. RR, at 54; *State v. Dawood*, 2017 WL

6  1376362, at \*2 (Ariz. Ct. App. 2017).) On July 21, 2017, the Arizona Court of Appeals

7  issued the mandate. (Doc. 13-6, Ex. SS, at 58.)

8      **D.    Petitioner's Federal Habeas Petition.**

9      On March 23, 2018, Petitioner filed a Petition. (Doc. 1.)[1] The Court has summarized

10  his claims as follows:

11          In Ground One, Petitioner alleges that various constitutional rights

12  were violated by his unlawful arrest absent a warrant or probable cause. In
   Ground Two, Petitioner alleges that various constitutional rights were

13  violated by the failure of police to comply with the Mesa Police
   Department's policy concerning possible armed suspects. In Ground Three,

14  he alleges that various constitutional rights were violated because he received
   ineffective assistance of counsel. In Ground Four, Petitioner alleges that

15  various constitutional rights were violated by efforts of the prosecutor,
   defense counsel, and settlement judge to coerce Petitioner into accepting a

16  plea offer and that the trial judge pressured the jury to convict him when the
   jury was initially unable to agree on a verdict.

17  (Doc. 4 at 2.) On September 27, 2018, Respondents filed a Response. (Doc. 13.) On

18  October 15, 2018, Petitioner filed a Reply. (Doc. 14.)

19  **III.    Procedural Default.**

20      **A.    Exhaustion.**

21      Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless

22  a petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state

23  remedies, a petitioner must afford the state courts the opportunity to rule upon the merits

24  of his federal claims by "fairly presenting" them to the state's "highest" court in a

25  procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide

26  the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in

27

28      [1] Petitioner avows the Petition was placed in the prison mailing system on February
   3, 2018 (doc. 1 at 11), but the envelope shows a mailing date of March 21, 2018 (doc. 2).
   Regardless, the Petition is timely.

1    each appropriate state court . . . thereby alerting that court to the federal nature of the

2    claim").

3    A claim has been fairly presented if the petitioner has described both the operative

4    facts and the federal legal theory on which his claim is based. *See id.* at 33. A "state prisoner

5    does not 'fairly present' a claim to a state court if that court must read beyond a petition or

6    brief . . . that does not alert it to the presence of a federal claim in order to find material,

7    such as a lower court opinion in the case, that does so." *Id.* at 31-32. Thus, "a petitioner

8    fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion

9    requirement if he presents the claim: (1) to the proper forum . . . (2) through the proper

10   vehicle, . . . and (3) by providing the proper factual and legal basis for the claim."

11   *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

12   The requirement that a petitioner exhaust available state court remedies promotes

13   comity by ensuring that the state courts have the first opportunity to address alleged

14   violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178

15   (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also require

16   federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See*

17   *Coleman*, 501 U.S. at 731-32. Under these principles, a habeas petitioner's claims may be

18   precluded from federal review in two situations.

19   First, a claim may be procedurally defaulted and barred from federal habeas corpus

20   review when a petitioner failed to present his federal claims to the state court, but returning

21   to state court would be "futile" because the state court's procedural rules, such as waiver

22   or preclusion, would bar consideration of the previously unraised claims. *See Teague v.*

23   *Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If

24   no state remedies are currently available, a claim is technically exhausted, but procedurally

25   defaulted. *Coleman*, 501 U.S. at 735 n.1.

26   Second, a claim may be procedurally barred when a petitioner raised a claim in state

27   court, but the state court found the claim barred on state procedural grounds. *See Beard v.*

28   *Kindler*, 558 U.S. 53, 59 (2009). "[A] habeas petitioner who has failed to meet the State's

procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731-32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed,* 489 U.S. 255, 260 (1989).

A procedurally defaulted claim may not be barred from federal review, however, "if the petitioner can demonstrate either (1) 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012) (quoting *Coleman*, 501 U.S. at 732). *See also Boyd v. Thompson*, 147 F.3d 1124, 1126-27 (9th Cir. 1998) (the cause and prejudice standard applies to *pro se* petitioners and to those represented by counsel). To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir. 2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). "'[P]rejudice' is actual harm resulting from the constitutional violation or error." *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where a petitioner fails to establish either cause or prejudice, the court need not reach the other requirement. *See Hiivala v. Wood*, 195 F.3d 1098, 1105 n.6 (9th Cir. 1999); *Cook*, 538 F.3d at 1028 n.13.

Lastly, "[t]o qualify for the 'fundamental miscarriage of justice' exception to the procedural default rule" a petitioner "must show that a constitutional violation has 'probably resulted' in the conviction when he was 'actually innocent' of the offense." *Cook*, 538 F.3d at 1028 (quoting *Murray*, 477 U.S. at 496). *See also Schlup v. Delo*, 513 U.S. 298, 329 (1995) (petitioner must make a credible showing of "actual innocence" by "persuad[ing] the district court that, in light of the new evidence, no juror, acting

reasonably, would have voted to find him guilty beyond a reasonable doubt.").

## IV. Ground One.

### A. Unlawful Arrest.

In Ground One, Petitioner alleges that he was subjected to "an unlawful arrest without warrant and/or probable cause." (Doc. 1 at 6.) Petitioner's Fourth Amendment claim is not subject to review by the Court. In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial." Petitioner had the opportunity to litigate this claim previously, but failed to do so. Also, Petitioner did not raise this claim on direct appeal, so the claim is unexhausted and procedurally defaulted. Petitioner provides no argument to excuse the procedural default of this claim. Petitioner was arrested based upon an arrest warrant[2], so his cursory allegation also fails.

### B. Sufficient Evidence of the Crime.

Petitioner also argues he is actually innocent because "there is no evidence to link Mr. Dawood to this alleged crime." (Doc. 1 at 6.) The Arizona Court of Appeals considered this claim on direct appeal. The court found:

> The man who robbed the store pointed a gun and demanded money and cigarettes, which the victims provided. D.B. and S.H. testified that the man did not wear gloves. Dawood himself admitted that he preferred Newport cigarettes. An unopened box of Newport cigarettes was found a short distance from the store, in the direction where the robber ran. Dawood's fingerprint was found on the cigarette box.[3] D.B. testified she was "scared and shaking" when the man pointed the gun at her, and S.H. testified she was "scared" during the robbery.
>
> Based on the evidence presented, reasonable jurors could conclude that Dawood was the person who robbed the convenience store at gunpoint, that he did so for pecuniary gain, and that the incident caused harm to the

---

[2] The armed robbery occurred on November 10, 2011. (Doc. 13-2, Ex. J, at 16.) Petitioner was arrested by warrant on January 14, 2012. (Doc. 13-3, Ex. K, at 57.)

[3] Also, the armed robber grabbed the cigarettes with his left hand. (Doc. 13-2, Ex. J, at 26.) The fingerprint on the cigarette pack matched Petitioner's left thumb. (Doc. 13-3, Ex. K, at 34.)

1    victims.

2    *Dawood*, 2013 WL 4611240, at *3

3         "A petitioner for a federal writ of habeas corpus faces a heavy burden when

4    challenging the sufficiency of the evidence used to obtain a state conviction on federal due

5    process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005), *amended,* No.

6    04-15562, 2005 WL 1653617 (9th Cir. July 8, 2005), cert. denied, 546 U.S. 1137 (2006).

7    The question is "whether, after viewing the evidence in the light most favorable to the

8    prosecution, any rational trier of fact could have found the essential elements of the crime

9    beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

10   Additionally, a "federal habeas court can only set aside a state-court decision as an

11   unreasonable application of . . . clearly established Federal law, § 2254(d)(1), if the state

12   court's application of that law is objectively unreasonable." *McDaniel v. Brown*, 558 U.S.

13   120, 133 (2010) (per curiam) (citations and quotations omitted).

14        Here, an armed robber stole money and cigarettes at gunpoint, dropped a package

15   of those cigarettes outside the door of the convenience store, and a fingerprint on that

16   cigarette package was matched to Defendant. It was not objectively unreasonable for the

17   court of appeals to deny this claim.

18        **C.    Failure to Investigate Crime Scene.**

19        Petitioner also alleges counsel provided ineffective assistance by failing "to

20   investigate" and "hire and investigator to discover all relevant facts available to be

21   discovered at the crime scene. . . ." (Doc. 1 at 6.) In his Reply, Petitioner cites to *Martinez*

22   *v. Ryan*, 566 U.S. 1, 17 (2012) to excuse the procedural default of his ineffective assistance

23   of counsel claim.

24        Under *Martinez*, a petitioner may establish cause for the procedural default of an

25   ineffective assistance claim by establishing the following: (1) the claim of "ineffective

26   assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there

27   being "no counsel" or only "ineffective" counsel during the state collateral review

28   proceeding; (3) the state collateral review proceeding was the "initial" review proceeding

in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." *Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318). Petitioner must show counsel's performance (1) fell below objective standards of reasonableness "outside the wide range of professionally competent assistance," and (2) prejudiced him by creating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding could have been different." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). If Petitioner can establish that he has a substantial claim of ineffective assistance of trial counsel, then he would establish cause and prejudice to excuse the procedural default of his claim.

Here, Petitioner fails to present a substantial claim that his trial counsel provided ineffective assistance by allegedly failing to hire an investigator to review the crime-scene evidence. Petitioner offers no evidence (or argument) that an investigation of the crime scene would have (1) brought forth new information, and (2) that the information may have changed the outcome of the trial. Petitioner must provide more than a mere assertion. *See Dows v. Wood*, 211 F.3d 480, 486 (9th Cir.2000) (counsel's failure to interview or call an alleged witness did not constitute ineffective performance where "there is no evidence in the record that this witness actually exists, other than from [the petitioner's] self-serving affidavit" and "no evidence that this witness would have provided helpful testimony for the defense"). Because Petitioner fails to present a substantial claim of ineffective assistance of counsel, Petitioner fails to establish cause to excuse the procedural default of this claim.

**V.      Ground Two.**

In Ground Two, Petitioner argues that his Constitutional rights were violated when Officer Chad Kirkpatrick failed "to correctly follow Mesa Arizona police policy" after he "encountered 2 persons dressed in the clothing white hoody shirts within a couple of block from the alleged crime" scene. (Doc. 1 at 7.) Petitioner argues that Officer Kirkpatrick "did

1  not call for back up (sic) which violate[s] Mesa Police protocol when there is an

2  investigation to an armed potential suspect." (*Id.*)[4]

3      Petitioner's claim is not cognizable on habeas review because he alleges that Officer

4  Kirkpatrick violated Mesa Police Department Policy. A violation of police policy is not a

5  violation of federal law, and thus is not a cognizable claim in habeas proceedings. *See*

6  *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 443 (9th Cir. 2007) ("[I]n federal court, there is

7  no right to bring a habeas petition on the basis of a violation of state law."); *Langford v.*

8  *Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) ("[A petitioner] may not, however, transform a

9  state-law issue into a federal one merely by asserting a violation of due process.").

10  **VI.    Ground Three.**

11      In Ground Three, Petitioner argues that trial counsel provided ineffective assistance

12  by failing to meet with Petitioner "in the Maricopa County Jail prior to trial, during trial,

13  prior to sentencing, [and] at sentencing." (Doc. 1 at 8.) Petitioner also argues counsel failed

14  to "request a Rule 11 evaluation as to competency for trial," failed to "evaluate [Petitioner's

15  ability] to read or write," and failed to present "witnesses on [Petitioner's] behalf at trial

16  and at sentencing." (*Id.*) Petitioner failed to present these arguments in his PCR petition or

17  amended petition. Petitioner was capable of advancing numerous claims in PCR

18  proceedings, and he fails to explain why he did not also raise these claims previously.

19  Petitioner also fails to demonstrate that any one of these claims is substantial because he

20  fails to specifically explain why counsel's conduct fell below objective standards of

21  reasonableness. Other than these cursory statements, Petitioner never explains his

22  attorney's omissions and, therefore, never provides any explanation as to why his

23  attorney's performance was deficient.[5] Moreover, Petitioner does not even attempt to

24

25      [4] Officer Kirkpatrick testified he excluded these suspects because they were walking casually, agreed to a pat down that uncovered no weapons or cigarettes, were not nervous,

26  and were cooperative throughout his contact. (Doc. 13-2, Ex. J, at 68.)

27      [5] In the Response, Respondents argued that Petitioner's claims were unexhausted and procedurally defaulted. (Doc. 13 at 22-23.) In his Reply, Petitioner cites to numerous cases but factually argues only that he "was denied access to defense counsel's medical

28  files with respect to prescribed medication counsel used while representing [Petitioner] in court." (Doc. 14 at 5.)

1  establish that "but for counsel's unprofessional errors, the result of the proceeding would

2  have been different." *Strickland*, 466 U.S. at 694. Under these circumstances, Petitioner's

3  allegations, unsupported by specifics, do not establish a substantial claim of ineffective

4  assistance of counsel. *See, e.g.*, *Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) (stating

5  that conclusory allegations with no reference to the record or other evidence do not warrant

6  habeas relief); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (same). Thus, Petitioner fails

7  to establish cause for procedural default of Ground Three under *Martinez*.

8  **VII.    Ground Four.**

9  Petitioner argues counsel, the prosecutor, and the court "had a settlement conference

10  in order to threaten, coerce, intimate and pressure [Petitioner] to plea to a crime he did not

11  commit." (Doc. 1 at 9.) During a short settlement conference on May 8, 2012, Petitioner

12  told Commissioner Lynch that he did not commit the crime. (Doc. 13-1, Ex. F, at 14.) The

13  Commissioner responded that "I wouldn't plead guilty to something you didn't do. But you

14  know the end result is probably going to be worse. But as long as you understand that,

15  that's fine." (*Id*.) A second settlement conference was held on June 5, 2012 before Judge

16  Pineda. (Doc. 13-1, Ex. G, at 37.) During that conference, Petitioner told the court he would

17  take a plea agreement of 18 months imprisonment, but nothing more. (*Id*. at 57.) Petitioner

18  fails to demonstrate that the court's comments were coercive. Also, Petitioner did not plead

19  guilty, so Petitioner cannot establish that he was prejudiced by any arguable conduct of his

20  counsel, the prosecutor, or the court.

21  Petitioner also argues "the court coerced, intimidated the trial jury to find

22  [Petitioner]guilty of the charges when the trial jury was unable to reach a verdict on the

23  evidence." (Doc. 1 at 9.) He argues the court erred by "directing the jury several times to

24  find a verdict in order to avoid a mistrial by hung jury." (*Id*.) Petitioner did not raise this

25  claim on direct appeal, so his claim is procedurally defaulted without excuse.

26  Assuming arguendo that Petitioner cites to *Martinez* to excuse the default, Petitioner

27  fails to present a substantial claim of ineffective assistance of counsel to excuse the

28  procedural default of this claim. After the case was submitted to the jury, and at the end of

day three of trial, the jurors submitted two questions to the court. (Doc. 13-3, Ex. K, at 134-136.) The court agreed with the parties to review the questions in Petitioner's presence the next morning. (*Id.*) In the morning of day four, the court advised Petitioner and the parties that the jurors submitted an additional question. (Doc. 13-3, Ex. L, at 145.) As to all three questions, the court instructed the jury "to rely on their own recollection of the evidence." (*Id.* at 146.) Later, the court addressed parties:

> THE COURT: Folks, I wanted to let you know that about half hour before we got word from the jury that they had a verdict, we got the following note from the jury:
>
> The jury was deadlocked eight to four and none of the – and then there's something scribbled out, looks like and eight – and none of the four was willing to change their vote. Then the vote changed to seven to five, but the likelihood of a unanimous verdict is negligible at this time, but please give us a bit more time.
>
> Signed by someone identifying themselves as the presiding juror.
>
> Given that they wanted more time, I did not notify you all at that time with regard to this. And so we now have heard the jury has a verdict.
>
> Anything that we need to do before we bring the jury in, Mr. Sammons?
>
> MR. SAMMONS : No, Judge.
>
> THE COURT: Mr. Turley.

(*Id.* at 146-147.)

Here, Petitioner fails to demonstrate that a claim of ineffective assistance of counsel is substantial. The court did nothing other than abide by the jury's request that they be given additional time to deliberate. The jury independently arrived at a verdict. The court's conduct was not coercive, so counsel did not provide ineffective assistance by failing to object to it. Petitioner fails to prove actual innocence, which also means he is barred from bringing his procedurally defaulted claims under the *Schlup* gateway. Petitioner presents no evidence that he is actually innocent of the offense. *See Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) ("[A]t a minimum, the petitioner must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." (punctuation modified)).

**CONCLUSION**

The record is sufficiently developed and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011). Based on the above analysis, the Court finds that Petitioner's claims are timely, but procedurally defaulted, not cognizable, and insufficient. The Court will therefore recommend that the Petition for Writ of Habeas Corpus (doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 17th day of December, 2018.

_____
Honorable John Z. Boyle
United States Magistrate Judge